**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

---

**DR. LAFARAH S. FRAZIER,**
Plaintiff,

v.

**CLINTON COLLEGE,**
Defendant.

---

**Civil Action No.:** _____

*(To be assigned by the Court)*

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION,**
**RETALIATION, AND BREACH OF CONTRACT**
*JURY TRIAL DEMANDED*

---

## I. JURISDICTION AND VENUE

**1.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-5(f)(3) (Title VII of the Civil Rights Act of 1964).

**2.** Venue is proper in the Rock Hill Division of the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b), as the Defendant is located in Rock Hill, York County, South Carolina, and the unlawful employment practices alleged herein occurred in Rock Hill, South Carolina.

**3.** Plaintiff has exhausted all administrative remedies. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 436-2025-01994. The EEOC issued a Notice of Right to Sue on January 20, 2026. This Complaint is filed within 90 days of receipt of that Notice.

## II. PARTIES

**4.** Plaintiff Dr. Lafarah S. Frazier is an individual residing in North Carolina. At all times relevant to this Complaint, Plaintiff was employed by Defendant Clinton College as Chief Health Officer and WACH Director, from April 19, 2022, until her wrongful termination on March 20, 2025. Plaintiff is a Black woman.

**5.** Defendant Clinton College is a private historically Black college located at 1029 Crawford Road, Rock Hill, South Carolina 29730. At all relevant times, Defendant employed fifteen (15) or more employees and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## III. STATEMENT OF FACTS

### A. Employment Background and Grant History

**6.** Plaintiff was employed by Clinton College as Chief Health Officer and WACH Director beginning April 19, 2022, at an annual salary of $80,000 as documented in her offer letter.

**7.** During her employment, Plaintiff served as Principal Investigator (PI) on multiple grants. On each prior grant, Plaintiff received additional salary compensation as PI, and the College received a 10%

administrative fee. At no time was any salary cap policy raised, applied, or communicated to Plaintiff in connection with any prior grant.

## B. The CRPH Grant Contract and Defendant's Breach

8. On or about July 1, 2024, a grant contract was executed between Clinton College and the Center for Rural and Primary Health Care (CRPH) for the period July 1, 2024, through June 30, 2026. The contract expressly included $45,000 in salary compensation for Plaintiff as PI over the two-year grant period.

9. Unlike prior grants, the CRPH grant did not permit the College to collect administrative fees. Plaintiff is informed and believes that Defendant's decision to withhold her contractual salary was motivated, at least in part, by the absence of administrative fee revenue to the institution.

10. Approximately 60 days after the CRPH contract was signed, then-President Dr. Lester McCorn informed Plaintiff that she would not be paid under the contract, citing a "salary cap" policy. This policy had never previously been applied to Plaintiff, had never been communicated to Plaintiff, and was not referenced at any point during contract negotiation.

11. In or around October 2024, a meeting was held at Clinton College attended by Former President Dr. Lester McCorn, Accounting Director Kendra Smith, HR Director Amanda Cowan Willis, and CFO Archinya Ingram. During this meeting, Accounting Director Kendra Smith — who is the cousin of CFO Ingram and who controlled grant disbursements — stated that it was "not fair" that she was not receiving compensation from the CRPH grant. Plaintiff is informed and believes that an email from the President on that date corroborates the meeting's occurrence. This statement evidences a personal financial conflict of interest that directly influenced Defendant's decision to withhold Plaintiff's contractual salary.

12. Defendant offered Plaintiff a $10,000 raise in lieu of the $45,000 contractual obligation. This offer was made in writing via email and is referenced in Plaintiff's termination letter. Plaintiff declined, as the offer represented less than 25% of her contractual entitlement.

## C. Premeditated Decision to Terminate and Retaliatory Conduct

13. In December 2024, a colleague informed Plaintiff that Clinton College had already made the decision to terminate her employment. This communication occurred approximately three months before Plaintiff's actual termination date, establishing that the termination was premeditated.

14. In late February or early March 2025, Plaintiff contacted CRPH, the grant funder, to report Clinton College's failure to honor the terms of the executed grant contract. This contact was made in Plaintiff's capacity as PI and constituted a protected activity, as Plaintiff was reporting Defendant's non-compliance with a state involved grant contract.

15. On March 20, 2025, Defendant, acting through Interim President Archinya Ingram, terminated Plaintiff's employment. The written termination letter cited "behavior that substantially interferes with business operations and unprofessional conduct." However, Plaintiff is informed and believes that Defendant's staff were separately told that Plaintiff was terminated for "disparaging the school" — a direct reference to Plaintiff's contact with the grant funder. The contradictory and shifting rationales offered by Defendant are evidence of pretext.

16. Interim President Archinya Ingram, who signed the termination letter, is the cousin of Accounting Director Kendra Smith, who had expressed a personal financial grievance regarding the CRPH grant at the October 2024 meeting. This familial relationship between the decision-maker and a financially interested party constitutes a direct conflict of interest.

## D. Board Notification and Failure to Act

17. On March 21, 2025, the day after her termination, Plaintiff contacted Board Member Dr. Dixon by telephone to report the wrongful termination and the conflict of interest between Interim President Ingram and Accounting Director Smith. Dr. Dixon listened to Plaintiff's complaint in full. During the conversation, Dr. Dixon indicated that the school had authority over its financial decisions. Dr. Dixon took Plaintiff's contact information and stated he would relay her concerns to the full board. Dr. Dixon never followed up with Plaintiff, and the Board took no action. The Board's failure to investigate a credible report of

retaliatory termination and institutional conflict of interest, after being directly informed of the allegations by Plaintiff, constitutes a breach of its fiduciary duty to the institution.

### E. Additional Contract Claims

18. Plaintiff was also the PI on a grant contract with Jobs with Justice in the amount of $12,000. Plaintiff received the first payment of $6,000 but the final payment of $6,000 was never made. This amount remains owed to Plaintiff.

19. As a direct result of her termination, Plaintiff lost a publishing opportunity associated with a third grant project, causing additional professional and financial harm.

### F. Damages

20. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including: (a) loss of employment and salary of $85,000 per year, totaling more than $92,000 in lost wages over the 13+ months since termination; (b) loss of $45,000 in contractual grant compensation; (c) loss of $6,000 in unpaid grant payments from Jobs with Justice; (d) loss of housing, as Plaintiff was forced to relocate due to inability to pay rent, with an outstanding unpaid rent balance; (e) loss of health insurance; (f) harm to professional reputation and career; (g) emotional distress, anxiety, and depression, for which Plaintiff has sought and received documented therapeutic treatment; and (h) ongoing financial hardship including creditor contact and damage to financial standing.

## IV. CAUSES OF ACTION

### COUNT I — Retaliation in Violation of Title VII of the Civil Rights Act of 1964

*42 U.S.C. § 2000e-3(a)*

21. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

22. Plaintiff engaged in protected activity under Title VII when she, as PI, contacted grant funder CRPH to report Defendant's failure to comply with the terms of an executed grant contract.

23. Defendant was aware of Plaintiff's protected activity, as evidenced by the fact that staff were told Plaintiff was terminated for "disparaging the school" by contacting the funder.

24. Defendant took adverse employment action against Plaintiff by terminating her employment on March 20, 2025.

25. A causal connection exists between Plaintiff's protected activity and her termination, as evidenced by: (a) the close temporal proximity between Plaintiff's contact with the funder and her termination; (b) the premeditated nature of the termination, decided months before it was executed; (c) the shifting and contradictory rationales offered by Defendant; and (d) the conflict of interest of the decision-maker.

26. As a result, Plaintiff has suffered damages as described herein.

### COUNT II — Wrongful Termination in Violation of Public Policy

27. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28. Plaintiff's termination violates the public policy of South Carolina, as it was carried out in retaliation for Plaintiff's good-faith report of institutional non-compliance with a grant contract, and was influenced by a direct conflict of interest on the part of the decision-maker.

29. As a result, Plaintiff has suffered damages as described herein.

### COUNT III — Breach of Contract

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. The CRPH grant contract, executed on or about July 1, 2024, constitutes a binding contract between the parties that entitled Plaintiff to $45,000 in salary compensation over the two-year grant period.

32. Defendant materially breached this contract by refusing to pay Plaintiff the compensation owed, citing a pretextual "salary cap" policy that had never previously been applied to Plaintiff and was not referenced during contract negotiation.

33. Defendant's breach was willful. Under South Carolina law, Plaintiff may be entitled to actual damages and, where the breach is willful, treble damages.

34. As a result of Defendant's breach, Plaintiff has suffered damages of at least $45,000, plus all consequential damages flowing therefrom.

### COUNT IV — Breach of Contract (Jobs with Justice)

35. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36. Plaintiff had an active grant contract with Jobs with Justice in the amount of $12,000. Plaintiff completed the work entitling her to the final payment of $6,000, which Defendant failed and refused to pay.

37. Defendant's failure to pay constitutes a breach of contract, and Plaintiff is entitled to $6,000 plus any applicable damages.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Clinton College, and award the following relief:

a. Back pay and lost wages from the date of termination through the date of judgment, at Plaintiff's annual salary of $85,000.

b. Front pay or reinstatement, at the Court's discretion.

c. Compensatory damages for the full value of the CRPH grant contract ($45,000).

d. Treble damages pursuant to South Carolina law for Defendant's willful breach of contract.

e. Compensatory damages for the unpaid Jobs with Justice final payment ($6,000).

f. Compensatory damages for emotional distress, pain and suffering, loss of housing, loss of health insurance, and harm to professional reputation.

g. Punitive damages for Defendant's willful, malicious, and retaliatory conduct.

h. Attorney's fees and costs of litigation pursuant to 42 U.S.C. § 2000e-5(k) and applicable law.

i. pre-and post-judgment interest as permitted by law; and

j. Such other and further relief as this Court deems just and proper.

## VI. JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Dr. Lafarah S. Frazier**

Plaintiff, Pro Se

6426 Springbeauty Drive

Charlotte, NC, 28227

(315) 263-0856

Shemeherlafarah@gmail.com

Date: 4/16/26

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated above, I filed the foregoing Complaint with the Clerk of the United States District Court for the District of South Carolina, Rock Hill Division, and served a copy upon Defendant Clinton College, 1029 Crawford Road, Rock Hill, South Carolina 29730.

**Dr. Lafarah S. Frazier**